Case 13-5908, USA v. Justin James, oral argument, 15 minutes per side. Mr. Lorenzi for the appellant. Judge, may I proceed? Thank you, Judge. My name is Gene Lorenzi. I represent Justin James. I'd like to reserve three minutes for rebuttal. Judge, we're going to switch gears a little. This is a criminal case. This is a case that has to do with a sentencing issue regarding Mr. James. On March 25, 2013, Mr. James pled guilty to a simple charge, which was possession of a gun. It was a 922G. And the only thing a 922G requires is elements of a 922G or possession that he be a felon. It doesn't require any specific intent for him to possess the weapon. It simply requires that there's some general knowledge that he knew it was a gun. That's what he pled guilty to. Within four months, Mr. James, he freely admitted his guilt to the police when he was stopped. He admitted his guilt at his plea before Judge Folks. And that was within four months of his guilty plea. What happened after that is the reason we're here. And the reason we're here is, all of a sudden, after the plea, the issue of whether Mr. James was guilty of assault with intent to commit second-degree murder became an issue. Our position is that the trial judge was somewhat confused. And the reason for the confusion is in the 3553 factors and the guidelines themselves. They're horribly confusing. Our position, essentially, is that the judge, if he's going to find that an individual should be sentenced to approximately, Mr. James got two more years in prison, because there was an allegation that there was an assault with intent to commit second-degree murder. The facts of this case, Mr. James had nothing against the gentleman he was shooting at. This all arose when... Well, you don't necessarily have to have something against the guy you shoot at to be guilty of an attempt to murder him. Well, Your Honor, I would suggest this. That's personal. Right. I would suggest that if you're going to make the assault the murder charge, a central issue of the case, that Mr. James should have a right to confront his accuser. And that's the problem here. Well, but hasn't that been determined? I mean, we had an en banc on this 15 or 20 years ago about whether all sorts of trial rights attach at sentencing. And we and every other court has held that they don't. So you can't get your full panoply of trial rights. You have a preponderance of the evidence standard. You have a clear error standard on the facts. So I don't know. I'm happy to listen to you on either the facts or the law. But on the facts, don't you have a hard row to hoe? Well, on the facts, Your Honor, I don't think... Can I respectfully disagree just a bit? No. Because the only people that came into the courtroom to testify to what happened were the police. And tape. And the video tape. Well, there was a video, which... There was a shooting. But there was no indication of who was being shot at, whether... I mean, the simplest thing, if you're going to be charged in a court of law, the simplest thing would be to bring the alleged victim in and say, did he shoot at you and why? Well, but we know the background. We know that the alleged victim had been physical with his girlfriend. The alleged victim, yes, Your Honor, had beaten up my client's girlfriend. Right. That my client had called or texted, sent a text saying, come, he's got a gun, he's coming after me. And then the next thing we know, he did drive by and there was a shot fired. In the record, what my client told to the probation office and told to the police, which was never challenged until after the sentencing, was, I shot in the ear. And all of a sudden, sentencing... Wait, after the sentencing. I'm sorry. Before the sentencing. After the guilty plea. I'm going too fast here. Until after the guilty plea was that, now we have an assault with intent to commit second-degree murder. And I agree... That's in the pre-sentence report also. Right. So it's not just at the sentencing. He wasn't blindsided. No, he was not. In the pre-sentence report, but I would respectfully suggest that the fact that he shot into the ear was reflected in the pre-sentence report. There wasn't any... The problem I have with this... The problem is that he pled guilty to one offense. And then at sentencing, effectively, it's turned into a different offense and the judge got to say that he intended to kill the guy. Well, that's what... There is some confusion. Judge White, I agree with you and I'm not disputing most of your statement. I am disputing that it's a little unclear what the judge said, whether it was relevant conduct or whether it was a 35-53 factor. And it does make a difference. The judge would have to find, and I would suggest as a matter of law, that there was a very specific intent to kill Mr. Willis. And that's just not in the record. What he said, well, I looked at the videotape, which is appropriate. And then he went a step further to suggest that, well, there's all these people in this apartment and this is a very egregious crime. So it went from him possessing a gun to shooting in an apartment where a lot of people are present. You're saying, well then, do we remand for him to either make a specific finding that there was an intent to kill? Judge, that's certainly the option that Judge Boggs pointed out that's the law. My problem with this is that from Apprendi to Lane, my client shouldn't have to come into court and prove his innocence to a second-degree murder charge. And there's horrible confusion in the guidelines. I have to sit there and explain to a client. I believe that if there's one thing you can suggest in criminal law, that there needs to be transparency. And to say that this is transparent is, I believe respectfully, a fiction. I mean, I'm trying to explain to my client, well, now they're saying you're guilty of second-degree murder or assault with intent. Before the plea, was there any discussion about the issue of relevant conduct that the prosecutor was going to try to get the guidelines calculated on the basis that this was relevant conduct? Before the plea, I believe, Judge, I don't believe so. Before the plea, I know there was. I just cannot remember. Between Mr. Biggers, it was very forthright. But there was some discussion, I think it was before sentencing, where if we couldn't work out this issue. But I believe, my recollection, it was pre-sentence. There was no plea agreement here. So he's not entitled to anything in the sense that no promises were made. Right. Right. And I just, and I'm sorry for that, but I cannot recall. I do not, and I want to be honest with the court, and I do not believe that was even an issue. I do want to reiterate again, this was four months for between an indictment and a plea is really quick. And he came in freely. He admitted the conduct to the gun. He had no issue with it. He gave a statement to the police. He gave a statement to the probation office. This issue of the second-degree murder never came up. The four months you keep talking about is between the indictment and the plea. And the plea. Although the incident was about 10 months before the plea. Was he, were they trying to find him in the interim, or had he been arrested and not indicted? Judge, he had been arrested. As my recollection, he had been arrested, and the state saw fit to charge him with reckless endangerment. Okay, but then the feds, this is Memphis, they come in and do the gun charge. We know that. Right. Let me ask you one thing to take you back, though, a minute ago about, you know, what you were shooting. You said, I heard you say, the pre-sentence report says he shot in the air. As I read it at paragraph 8, it says he shot over the top of the car. Is there something I'm missing, or are you just characterizing the same thing? Judge, Mr. James made a statement to the police that he shot into the air. I know that, but you had said to the pre-sentence report. I may have been mistaken, but he made a statement, and I don't think that was challenged up until the point of the sentencing hearing. Well, but again, it's not challenged only if you believe that shot over the top of the car is the same as shooting in the air. And then in the objections to the pre-sentence report, you pretty much make the same arguments you're making here, right? Right. So, I mean, again, this wasn't a sandbagging at the sentencing hearing. No. Everybody knew this was at issue at least from the time of the pre-sentence report. Yes. And from the objections to the pre-sentence report. Right. And unequivocally. And the pre-sentence report says that he says that he shot into the air, but the pre-sentence report is entirely attributing that to what he said.  Well, Judge, if you're going to take the pre-sentence report as the facts, and we admit it to those pre-sentences. Well, the fact is that he said he shot into the air, but I believe that the pre-sentence report also mentions that there's a video, and that the video shows him climb out of the front passenger window and shoot over the top of the car in the direction of the man walking. We don't dispute that. The question becomes, was there a specific intent to kill Mr. Percival Wallace? No. What I was getting at was that I thought you said that if you're going to take the pre-sentence report as the facts, then you have to take it as a fact that he shot into the air because the pre-sentence report mentions it, and that's clearly not the case. Well, Judge, can I respectfully argue that? It says he did shoot over the car. There's no question. That's what happened. But he was saying it wasn't shooting at Percival Wallace. And my whole point here now is, well, I'm arguing to the jury that whether or not there was a specific intent to kill, and I think that's the problem I'm having. The problem I'm having is... The problem you're having is what the pre-existing law on sentencing is, because you're exactly right that if this was an indictment for second-degree murder, you'd have to have proof beyond a reasonable doubt. You would get all those protections. But the law is not that for sentencing, is it? Your Honor... Maybe it ought to be, but... Well, I would maybe invite the court, potentially, since Elaine. I mean, I do think I am going to... I stand pat on my statement. Between Apprendi and Elaine, the court is having all kinds of problems. Even the Supreme Court is having problems defining, well, is this an element of a crime, or is this a sentencing factor? I would suggest, respectfully, that it would be much simpler for the judge just to look at this as a 3553 factor. I think the judge looked at the 3553 factor. The whole problem here was that there were other people... If he did that, then he would have to justify it as a variance here, would he not? Because it would then, to get to the sentence that he had, it would be outside the sentencing range. That's exactly right. Of course, it would be very favorable to you. Well, but 3553, I think that's the law. And the problem is, as I cited in my brief, what's happened, even though since Brooker, now these are supposedly advisory, what's happening, I'm defending these in court, and I'm put in a position of having to defend a second-degree murder charge by a preponderance of the evidence. And I would respectfully just suggest that there are some issues here. I mean, when you're bringing a defendant into court on a gun charge, and then you have totally unrelated conduct, and then we're fighting a second-degree murder, I'm not suggesting... I think Elaine said that if you're going to sentence people to conduct, that they have a right to confront their accusers. And I just, under this set of circumstances... Well, did you ask... Excuse me? Did you ask for more witnesses? Did you... Judge, that's... I've got a criminal defendant. It's not my... Can I respectfully... I'm going back to, I guess, hornbook law. It's not my job to prove his innocence. And that's the problem I have. And I know that's difficult because the guidelines are there and they're easy. All you have to do is look at a box. This makes rational sense. And then bringing witnesses into court and actually having a trial is a difficult proceeding. And you never attempt to withdraw the plea or anything, right? No. We don't suggest... We just suggest simply, very simply, that if the court would just look at the 3553 factors and not put my client as to having to defend the second-degree murder charge. It doesn't... It's inconsistent. The state saw fit not to charge him with... The state charged him with the right thing. The state charged him with reckless endangerment, which is a general intent crime, meaning I didn't really intend to kill him. I would shoot at somebody, and I would respectfully request that that's the appropriate analysis. And I know that the law... Judge Boggs is correct. The law says we're supposed to look at the guidelines. But I think if the court was... I think if the court were to only look at the 3553 factors, there would have been a different outcome. And, yes, I am asking you to remand the case back to Judge Boggs for resentencing. There was nothing in the record that suggested at any point there was a specific intent to kill. He did say, well, I looked at the video. And my argument, and I apologize, there's a case out of the Second Circuit, U.S. v. Stroman, S-T-R-O-M-A-N, which has this exact analysis. Even though there was a shooting in that case, the Second Circuit Court of Appeals said specifically, even though there was a shooting, if the judge is going to use this guideline provision, it must make a specific finding. And that simply wasn't done here. Thank you. Thank you, counsel. May I please the court? David Biggers, Western District of Tennessee, on behalf of the United States. This court should affirm the district court's sentence for two reasons. First, the district court properly calculated the guideline range using the cross-reference to assault with the intent to commit second-degree murder. Did the judge find that he intended to kill? Yes, Your Honor. If you look specifically or cite in the government's brief, page ID 97, lines 4 through 21, the court clearly goes through how he found the defendant's intent to commit second-degree murder. He pointed to the actions that occurred prior to the actual shooting. As cited today, the defendant's girlfriend, altercation with Mr. Walls, it's the victim's name, Purcell Walls, the fact that after that incident the defendant came to the apartment complex, got into an altercation with Mr. Walls, left, then came back to the apartment complex with a firearm, sought after Mr. Walls in that apartment complex, pulled out a firearm, as the court has already described, sat on the passenger's side door, pointed his arm over the hood of the car, pointed the gun at the victim, Purcell Walls, who was walking next to a white SUV and began firing shots at Mr. Walls. So, yes, the court specifically found the intent at the sentencing hearing after hearing from Officers Mack, Officers Bullard, as well as reviewing the video. In addition to that, the court also had the opportunity to hear from Marshall Seth Bruce, who testified about a letter obtained from the defendant's cell during a search where he sought to have his girlfriend come and testify to say that he was not trying to harm Mr. Walls but only shooting into the air. And I'll point out for the record that at the point of sentencing, the defendant did not contest any of the factors, specifically with regard to a cross-reference applying. The only objection the defendant had at sentencing was whether or not the specific cross-reference to attempt to commit second-degree murder applied, as opposed to reckless endangerment, as he's argued today. The government submitted that whether or not a cross-reference applies at all was what flies in the face of the defendant's argument. Either no cross-reference applies or it's reckless endangerment. The defendant's argument that the cross-reference should not apply because it subjects the defendant to a completely separate incident is completely false. Going back to this particular case, the defendant did hear the facts, as read onto the record, at the change of plea hearing. And at that time, he objected to the facts regarding the shooting, and that was the basis for the open plea at the district court level, as opposed to an actual plea agreement in this particular case. Going to the actual factual findings by the court, the court did not clearly err in finding that the defendant had the specific intent to commit the second-degree murder at the time, based on the video, the testimony of the officers, as well as the circumstances that occurred prior to the shooting. Going to whether or not the sentence was too harsh in this case or the sentence was reasonable, the government submits that the district court imposed a reasonable sentence at the time. It properly calculated the guidelines. It properly considered the 3553A factors and imposed a sentence within the guideline range as calculated. The defendant, in this case, cannot overcome that presumption, and for those reasons, the government submits that this case should be affirmed. If there are no other questions, thank you for your time. Judge, the only thing I would respond to was Judge Folk's suggestion regarding specific intent to kill. I think he said, well, he looked at the video, and he said, well, it's obvious, but he never said. Then he also suggested that this was a very horrible crime because other people were present in the apartment, which doesn't go to the specific intent to kill Mr. Wallace. Yeah, Wallace. It goes to the 3553 factors, and that's essentially my argument. It's just it is unclear. Well, the page that your adversary cites, and this is oral stream of consciousness, but he says murder in the second degree is an intentional killing. We're not talking first degree. Murder in the second degree is an intentional killing. The video was just compelling. It is just obvious. That seems to be a reference to the point he's just made. Do I know it's an intentional killing? And he then, you know, gives lots and lots of reasons, and several times in it he refers to intent. So you're saying that wasn't clear enough, that it wasn't intentional? Judge, I think the rest of it is the problem is with the rest of it, and the rest of it has to do with there was many people in the apartment. I mean, he either had a specific intent to kill Mr. Wallace or he had a specific intent to kill everybody in the apartment, and I think the court's problem was with everybody else, and that's I think that should have been left to Mr. Wallace or the 3553 factors. The judge certainly could have considered this, shooting at Mr. Wallace and shooting at other people in the apartment. He also says what I saw in the video does not support reckless endangerment, which is the alternative, which takes us to me. To me, again, that's an indication that he found the opposite, second-degree murder. Well, Judge, there is a good argument. I mean, there's an excellent argument, and I just think if you're going to charge somebody with second-degree murder, it has to be specific. It shouldn't be left up to argument and speculation. And I know it was very close, and I'm not suggesting that, but what you've done is you've put somebody in a position of having to defend, again, defend a second-degree murder charge. And maybe that is the status of the law today, but I just think if that's what we're going to do, then there needs to be a specific statement in the record. Yes, I saw him deliberately intend to kill Percival Wallace, and that's just not in the record. And I'm not really splitting hairs. I think if you're going to sentence somebody to two additional years in prison, that that's what you have to have. Well, but you're talking about the intent in all of that. Putting aside second-degree murder where you can have recklessness, if the guy had been – well, never mind. Okay. Judge, if there are no further questions, that's all I have. Thank you. Thank you, counsel, and we particularly want to thank you for the fact that you are CJA appointed, and we're very grateful for the service that the CJA panel attorneys provide. Case will be submitted. Clerk, may I call the next case?